UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

COLETTE L. HUFFMAN,

    Plaintiff,

vs.                                                      Case No.  3:06-cv-709-J-MCR

MICHAEL J. ASTRUE[1], Commissioner of
the Social Security Administration,

    Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[2]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and **REMANDED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on October 1, 2002, alleging an inability to work since December 5, 1999. (Tr. 94-96). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. 53, 55, 57, 61). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on August 24, 2005. (Tr. 27, 29, 66, 71). On

---

[1] Michael J. Astrue became the Commissioner of Social Security Administration on February 1, 2007. In accordance with Fed. R. Civ. P. 25(d)(1), Michael J. Astrue should be substituted as Defendant in this litigation.

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

1

November 10, 2005, the ALJ issued a decision finding Plaintiff not disabled.  (Tr. 14-26).  Plaintiff filed a Request for Review by the Appeals Council on December 13, 2005 (Tr. 10), but the Appeals Council denied the request on June 15, 2006 (Tr. 7-9).  Accordingly, the ALJ's November 10, 2005 decision is the final decision of the Commissioner.  Plaintiff timely filed her Complaint in the United States District Court on August 7, 2006.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since December 5, 1999 (Tr. 94, 105) due to degenerative disc disease; cervical disc bulge; mood swings; chronic pain and fatigue; carpal tunnel left and right wrists; depression; anxiety; iron deficiency anemia; diabetes; obesity; left shoulder bursitis; plantar fasciitis; hearing loss; limited concentration; and inability to lift her arms, to reach, bend, stoop, kneel, lift, crawl, sit for prolonged periods of time, or stand for prolonged periods of time (Tr. 54).

### B.     Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was fifty-four years of age (Tr. 53) with a Graduate Equivalency Degree ("GED") (Tr. 30, 111) and past relevant work experience as a teacher's assistant, a licensed family day care owner, and a cafeteria worker (a baker and a cashier) (Tr. 30-32, 106, 121).

Plaintiff's medical history is discussed in the ALJ's decision and therefore, will not be repeated in full here.[3]  However, by way of summary, the record indicates Plaintiff visited the Neurological Associates of the Palm Beaches on February 2, 1994 and was diagnosed with

---

[3] Because Plaintiff's mental impairments were not raised on appeal, the Court does not discuss them.

right Carpal Tunnel Syndrome ("CTS").  (Tr. 203).  In 2000, Plaintiff started seeking treatment for her pain at the Veterans Administration ("VA") Lake City.  (Tr. 233, 354).  On October 18, 2000, she underwent X-Rays/MRI which showed no evidence of rotator cuff pathology in her left shoulder, mild acromioclavicular joint hypertrophy, mild subchondral cyst formation of the humeral head, disc disease, and hypertrophy of the uncovertebral joints.  (Tr. 276).  On December 7, 2000, Plaintiff reported to the VA (Tr. 352) with complaints of severe pain in her left arm radiating into her chest and neck (Tr. 354).  She was diagnosed with left shoulder bursitis/cervical arthritis.  (Tr. 352).

On January 4, 2001, Plaintiff was diagnosed with chronic left shoulder pain.  (Tr. 349).  Plaintiff's March 2, 2001 laboratory test revealed a microcytic hypochromic anemia.  (Tr. 342).  On June 1, 2001, Plaintiff was diagnosed with mild acromiaclavicular joint hypertrophy, mild subchondral cyst formation of the humeral head, disc disease, and hypertrophy of the uncovertebral joints.  (Tr. 334).  On July 19, 2001, she was diagnosed with CTS, impingement syndrome secondary to arthritis, and asymptomatic facet arthropathy of the cervical spine.  (Tr. 276).  On August 23, 2001, Plaintiff underwent an ECG and the results were normal except for Plaintiff's poor exercise tolerance.  (Tr. 270).  On October 16, 2001, Plaintiff's MRI of the cervical spine demonstrated some abnormal signal intensity, broad-based disc bulge, and left neural foraminal narrowing.  (Tr. 697).  On November 15, 2001, Plaintiff reported to the VA with complaints of tingling and numbness in both hands, and pain in the upper back and left shoulder.  (Tr. 266).  She was assessed with delayed distal latency of the median nerves.  (Tr. 267).  On November 30, 2001, Plaintiff underwent a thoracic exam of the cervical spine that revealed degenerative disc disease changes C5, 6, and 7.  (Tr. 697).

In 2002, Plaintiff complained of progressive numbness and pain in the first three digits of her right hand. (Tr. 314). Nerve conduction studies indicated median nerve compression at the carpal tunnel and she was diagnosed with right CTS. Id. On January 2, 2002, Plaintiff underwent a right carpal tunnel release procedure which was successful. Id. On June 28, 2002, she complained of pain in her lower back, legs, and right shoulder. (Tr. 361). She was examined at the VA and assessed with diabetes mellitus type II, hypertension, hyperlipidemia, and left trapezius myofascitis. (Tr. 298). On August 28, 2002, she was diagnosed with cervical disc and shoulder arthritis. (Tr. 260).

On December 9, 2002, Plaintiff was evaluated by Dr. Robert A. Greenberg. (Tr. 376). Dr. Greenberg's impression was bilateral CTS, non-insulin dependent diabetes, and severe osteoarthritis of the cervical spine, lumbar spine, hips, and shoulders. (Tr. 377). Dr. Greenberg stated "[Plaintiff] would be unable to perform any type of work-related activities that required heavy lifting, bending, or heavy exertion." Id.

On January 28, 2003, Plaintiff was admitted to the VA with chronic neck and left shoulder pain. (Tr. 559). She underwent a bilateral cervical and right shoulder trigger point block procedure. (Tr. 542). On February 3, 2003, she underwent an ECG and blood tests. (Tr. 480, 540, 576, 654). The results were normal except for her high glucose level (Tr. 576, 581, 593-609). Plaintiff had slight soreness in her right thigh and ache on pressure, but she was in no acute distress. (Tr. 538).

On May 22, 2003, Dr. Donald W. Morford completed a physical Residual Functional Capacity ("RFC") assessment on Plaintiff. (Tr. 424). It showed she could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday. (Tr. 425). He noted Plaintiff could occasionally

climb, balance, stoop, kneel, crouch, and crawl (Tr. 426), but she should avoid concentrated exposure to extreme cold, extreme heat, and hazards (Tr. 428). Dr. Morford assessed no manipulative, visual (Tr. 427), communicative (Tr. 428), or push/pull limitations (Tr. 425). In conclusion, he stated Plaintiff's diagnoses and complaints exceeded the objective findings (Tr. 429), and that Dr. Greenberg's limitations were consistent with the RFC (Tr. 430).

On June 24, 2003, Plaintiff underwent bilateral cervical and shoulders trigger point block procedure. (Tr. 519). On September 15, 2003, she underwent a wrist MRI which showed no evidence of fracture or dislocation and ruled out ganglion cyst. (Tr. 562, 585). The assessment included exacerbation of lower back pain, diabetes, chronic neck pain, and a right wrist "knot." (Tr. 511). On October 7, 2003, she reported for a physical therapy at the VA. (Tr. 465-69, 502). Plaintiff was diagnosed with chronic pain in her lower back and both legs (Tr. 469, 502, 760), and prescribed a TENS unit (Tr. 761). On October 8, 2003, she reported to the VA for kinesiotherapy. (Tr. 457, 488, 746). She was diagnosed with lower back pain (Tr. 488, 746) and advised to avoid heavy lifting (Tr. 746).

On November 3, 2003, Dr. Daria F. Marranzini completed a physical RFC assessment on Plaintiff. (Tr. 446). It showed Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours, and sit for six hours in an eight-hour workday, but must periodically alternate sitting and standing to relieve pain or discomfort. (Tr. 447). Dr. Marranzini noted that Plaintiff could occasionally climb (except ladders, ropes, or scaffolds), balance, stoop, kneel, crouch, or crawl (Tr. 448), that she should avoid concentrated exposure to hazards, and that she had limited hearing abilities (Tr. 450). Dr. Marranzini assessed no manipulative, visual (Tr. 449), or push/pull limitations (Tr. 447). She concluded Plaintiff's symptoms were attributable to a medically-determinable

5

impairment and their severity and functional limitations were consistent with the total medical and non-medical evidence.  (Tr. 451).

On November 14, 2003, Plaintiff underwent a lumbar spine MRI which showed degenerative changes of the lower lumbosacral spine.  (Tr. 560, 585).  On December 18, 2003, she reported to the Veterans Administration Medical Center ("VAMC") with complaints of right hand pain.  (Tr. 645-46, 739).  Her X-rays were normal and she was prescribed ibuprofen and heat treatment.  Id.  On December 30, 2003, Plaintiff underwent bilateral cervical and shoulder trigger point block procedure.  (Tr. 737).  She was diagnosed with cervical neuropathy, arthritis, disc disease, diabetic polyneuropathy, and chronic pain in the shoulders.  (Tr. 738).  Plaintiff was discharged in good condition.  Id.

On May 7, 2004, Plaintiff underwent another bilateral cervical and shoulder trigger point block procedure.  (Tr. 712).  She was diagnosed with neuropathy, diabetic polyneuropathy, arthritis, and chronic neck and shoulder pain.  (Tr. 714).  Plaintiff was discharged in good condition.  Id.  On June 21, 2004, she underwent an ECG and the results were abnormal.  (Tr. 580).  She had an inferior infarct.  Id.  Her chest study was normal (Tr. 584), but her lab results showed four out-of-range levels (Tr. 593-609).  It was noted her chest pressure was most likely non-cardiac.  (Tr. 710).  On discharge, Plaintiff was ambulatory and stable.  (Tr. 708).

On August 26, 2004, Plaintiff's shoulder exam at the VAMC revealed no acute fracture and no definite dislocation at the right shoulder joint.  (Tr. 584, 697).  Her lab results showed seven out-of-range levels.  (Tr. 593-609).  On the same date, Plaintiff was examined by Dr. Liza S. Yballe.  (Tr. 762).  Dr. Yballe noted Plaintiff had been receiving trigger point injections in her neck and shoulder that relieved the pain temporarily, that

6

Plaintiff had been taking ten or eleven tablets of Darvocet daily even though she was prescribed no more than four per day, and that the medication she took for her muscle spasm in the upper right trapezius caused drowsiness. (Tr. 701). Dr. Yballe stated she was ambulating without assistive device, but Plaintiff requested a cane for those days when her back pain was more severe. (Tr. 702).

On October 4, 2004, Plaintiff was diagnosed with myofascial pain syndrome. (Tr. 693). On the next day, Plaintiff was issued a cane. (Tr. 620). A note from a VAMC physician showed Plaintiff's pain was predominantly myofascial and did not justify narcotic therapy. (Tr. 672). On November 12, 2004, Plaintiff was seen by Dr. Yballe. (Tr. 681). Dr. Yballe's assessment was diffuse arthralgias (myofascial pain), bilateral CTS status post right carpal tunnel release, inadequately-controlled diabetes mellitus and hypertension, coronary artery disease, menopause, adequately controlled hyperlipidemia, and obesity. (Tr. 685). Plaintiff's chest MRI dated November 18, 2004 showed suspicious small infiltrate right lung base (Tr. 584) and her lab results had four out-of-range levels (Tr. 593-609).

On February 10, 2005, Plaintiff stated she felt great in terms of her pain. (Tr. 673). On February 24, 2005, she underwent an EMG consult for her upper and lower extremities and the results were negative. (Tr. 621-22, 667). Her physical exam was generally normal. (Tr. 669-70). Plaintiff's MRI showed no neural compression or spinal stenosis. (Tr. 665). On April 4, 2005, she was diagnosed with a lumbar radicular pain. (Tr. 661).

On May 16, 2005, a VAMC physician completed an Occupational Therapy Physical Functional Assessment on Plaintiff. (Tr. 767). Plaintiff was diagnosed with back, shoulder, and leg pain. Id. The assessment indicated Plaintiff was able to lift twenty and a half pounds occasionally and ten pounds frequently; carry twelve pounds occasionally and six

pounds frequently; push forty pounds; and walk, sit, or stand for ten minutes without reporting discomfort or pain. (Tr. 767-68). Plaintiff had a full range of motion, demonstrated ability to perform reaching activities, and demonstrated functional bilateral hand grasp. (Tr. 768). It was noted Plaintiff had diminished sensation and grip strength in both hands and lower than normal pinch in her right hand. Id. The assessment showed Plaintiff should avoid all bending due to her pain. Id. On a scale of one to ten, Plaintiff's pain was a five before the assessment and a six after the assessment. Id.

On June 6, 2005, Dr. Yballe completed a lumbar spine RFC questionnaire. (Tr. 762). Plaintiff reported her pain was a six to an eight on a scale of one to ten and it was worse with activity or walking. Id. Dr. Yballe noted Plaintiff had the following symptoms: chronic pain in the back, neck, both shoulders, and both legs; menopausal symptoms; mood swings; insomnia; and hot flashes. Id. The RFC questionnaire revealed Plaintiff had a full range of motion, muscle spasm, abnormal gait, tenderness, crepitis, impaired sleep, and impaired appetite or gastritis. (Tr. 763). Plaintiff's symptoms or functional limitations were worse with stress or anxiety. Id. Dr. Yballe stated Plaintiff's "problems are expected to be chronic" (Tr. 762) and her pain or other symptoms are constantly severe enough to interfere with the attention and concentration necessary to complete even simple work tasks (Tr. 763).

Dr. Yballe stated Plaintiff was able to walk fifty feet without rest or severe pain, sit or stand for ten minutes at a time, and sit and stand or walk for less than two hours in an eight-hour workday. (Tr. 763-64). She indicated Plaintiff needed to walk around for two minutes every ten minutes, sometimes needed to take unscheduled breaks lasting two or three minutes every ten minutes, needed to use a cane while engaging in occasional standing or

8

walking, and needed a job that permits shifting positions at will from sitting, standing, or walking. (Tr. 764).

Further, Dr. Yballe noted Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, but should never twist, stoop, crouch, and climb ladders or stairs. (Tr. 765). Dr. Yballe opined Plaintiff has significant limitations in doing repetitive reaching, handling, or fingering; Plaintiff could do fine manipulations with her fingers, and grasp, turn, or twist objects with her hands for about twenty minutes in an eight-hour workday; Plaintiff could reach with her arms for four hours in an eight-hour workday; Plaintiff was likely to be absent from work more than four days per month as a result of her impairments or treatment; and Plaintiff's hearing problems would likely affect her ability to work, but her impairments were also likely to produce "good days." Id. She concluded Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in the evaluation. (Tr. 763).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. § 404.1520(a). First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(g). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the non-disability requirements for a period of disability and DIB as set forth in Section 216(I) of the Social Security Act through December 31, 2004. (Tr. 18). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, December 5, 1999. Id. At steps two and three, the ALJ held Plaintiff had

> osteoarthritis of the cervical spine, lumbar spine, hips, and shoulders; lumbar radiculopathy; cervical myofascial pain; bilateral carpal tunnel syndrome, status post right carpal tunnel release; and non-insulin diabetes mellitus, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, of Regulations No. 4.

(Tr. 21). The ALJ found Plaintiff's mood disorder was a non-severe impairment. Id. The ALJ determined Plaintiff retained the RFC "to perform a reduced range of light work." (Tr. 23). The ALJ noted Plaintiff "can sit 8 hours, 30 minutes without interruption; and stand and/or walk 4 hours, 20 minutes without interruption," "lift and/or carry 20 pounds occasionally and 10 pounds frequently," "occasionally bend, stoop, climb, crouch, and reach above shoulder level but never crawl or kneel." Id.

10

At step four, based on the testimony of the vocational expert ("VE"), the ALJ found Plaintiff was unable to perform any of her past relevant work. (Tr. 24). Using the VE's testimony, the ALJ found Plaintiff had the following transferable skills: compiling information and speaking/talking/communication skills. Id. At step five, based on the testimony of the VE, the ALJ concluded Plaintiff retained "the capacity for work that exists in significant numbers in the national economy" and was not disabled "as defined in the Social Security Act, at any time through the date of this decision" based on her age, education, work experience, and RFC. (Tr. 25).

## III.    ANALYSIS

### A.    The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401)).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining a court must scrutinize the entire record to determine the reasonableness of the factual findings).

**B.     Issues on Appeal**

Plaintiff argues two issues on appeal. (Doc. 12, pp.13-20). First, Plaintiff asserts the ALJ erred when he assigned "little weight" to Dr. Yballe's opinion and specifically, to the lumbar spine RFC questionnaire completed by Dr. Yballe on June 6, 2005. (Doc. 12, pp.13-15). Plaintiff claims the ALJ's reasons for giving little weight to Dr. Yballe's opinion failed to meet the Eleventh Circuit's "good cause" requirement that must be established when the ALJ decides to discount a treating physician's opinion. (Doc. 12, pp.13-14). The Commissioner responds the ALJ properly gave specific reasons supported by the evidence in the record as to why he found Plaintiff was not disabled. (Doc. 13, p.7).

Second, Plaintiff argues the ALJ erred by failing to state what weight he assigned to the VAMC's Occupational Therapy Physical Functional Assessment dated May 16, 2005. (Doc. 12, p.18). The Commissioner responds that the ALJ adequately considered the functional assessment and that its findings are very similar to the ALJ's RFC assessment. (Doc. 13, pp.11-12). Because the Court finds this issue dispositive, it will discuss it first.

### 1. Whether the ALJ committed a reversible error by failing to state the weight assigned to the VAMC's Occupational Therapy Physical Functional Assessment dated May 16, 2005

Plaintiff argues the ALJ committed error by failing to state what weight he assigned to the May 16, 2005 functional assessment. (Doc. 12, p.18). After an independent review of the medical records, the Court agrees.

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination. See 20 C.F.R. §§404.1520(a). In addition, the ALJ must state the weight afforded to the evidence considered. Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). Specifically, the judge "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence." Lucas v. Sullivan, 918 F.2d 1567, 1574 (11th Cir. 1990). Indeed, "[u]nless the [ALJ] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (quoting, Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979)). Although the ALJ is required to consider all of the evidence, he is not required to discuss all of the evidence presented, but rather must explain why "significant probative evidence has been rejected." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

In the instant case, the ALJ mentioned the May 16, 2005 functional assessment (the "assessment") (Tr. 20-21) and referred to it again when he noted it was inconsistent with Dr. Yballe's opinion (Tr. 23). However, the ALJ did not specifically state what weight he

assigned to the assessment. (Tr. 17-26). Despite the Commissioner's argument to the contrary, the Court finds this assessment to be significantly probative evidence in that it is inconsistent with the ALJ's RFC. As such, the ALJ was required to at least explain his reasoning for rejecting the assessment.

The assessment and the ALJ's RFC were not consistent. While the ALJ determined Plaintiff could carry twenty pounds occasionally and ten pounds frequently (Tr. 23), the assessment revealed Plaintiff was only able to carry twelve pounds occasionally and six pounds frequently (Tr. 767). The ALJ found Plaintiff could walk and/or stand for four hours, twenty minutes without interruption (Tr. 23), however, the assessment indicated Plaintiff could only walk or stand for ten minutes without reporting discomfort or pain (Tr. 767-68). Additionally, the ALJ determined Plaintiff could sit for eight hours, thirty minutes without interruption (Tr. 23), while the assessment showed Plaintiff could sit for ten minutes without reporting discomfort or pain (Tr. 768).

In arguing that the assessment and the RFC are consistent, the Commissioner points out that the assessment does not explicitly state Plaintiff could only sit, stand or walk for ten minutes, but rather, merely states Plaintiff tolerated ten minutes of sitting, standing and walking before experiencing pain. (Doc. 13, p.11). The Commissioner claims "[i]t appears that all of the tests were stopped by the testing administrator, not by Plaintiff" (Doc. 13, p.12), however, the assessment states: "Ms. Huffman reported that she was in [pain] when began and that pain continued throughout the evaluation process. She participated in all activities but discontinued activities due to increased pain." (Tr. 768).

Additionally, this portion of the assessment is consistent with the RFC questionnaire

14

prepared by Plaintiff's treating physician, Dr. Yballe, who stated Plaintiff could sit or stand for only ten minutes at a time. (Tr. 764, 768). The ALJ discredited Dr. Yballe's opinion and utilized the assessment as one of the reasons for discounting her opinion. Because the assessment seems to agree with Dr. Yballe's opinion, the ALJ should have indicated what weight he gave to the assessment.

Moreover, the assessment revealed Plaintiff was only able to carry twelve pounds occasionally and 6 pounds frequently, which would exclude her from being able to perform light work.[4] The ALJ found Plaintiff capable of performing light work. Again, this discrepancy leads the Court to conclude that the ALJ should have explained his reasoning for rejecting the assessment's findings.

### 2. Whether the ALJ properly evaluated the opinion of Plaintiff's treating physician, Dr. Yballe

Plaintiff also argues the ALJ erred when he assigned little weight to Dr. Yballe's opinion, and specifically, to the lumbar spine RFC questionnaire completed by Dr. Yballe on June 6, 2005. (Doc. 12, pp.13-15). Plaintiff asserts the ALJ's reasons for giving little weight to Dr. Yballe's opinion failed to meet the Eleventh Circuit's "good cause" requirement that must be established when the ALJ decides to discount a treating physician's opinion. (Doc. 12, pp.13-14). The Court has considered the record, the briefs, and the applicable law, and finds the ALJ appropriately discounted Dr. Yballe's opinion, however, because the Court is

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 CFR § 404.1567.

15

remanding the case for the ALJ to re-evaluate the May 16, 2005 assessment and because portions of this assessment are consistent with Dr. Yballe's opinion, the Court directs the ALJ to reconsider Dr. Yballe's opinion in light of the May 16, 2005 assessment.

Plaintiff is correct that the opinion of a treating physician, such as Dr. Yballe, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1241. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing. Id. In this case, the ALJ provided several reasons for his decision to give Dr. Yballe's opinion little weight. As noted above, the Court believes the majority of the reasons provided by the ALJ are supported by substantial evidence. The Court will now discuss these reasons.

First, the ALJ did not err by concluding that Dr. Yballe's opinion in the June 6, 2005 RFC questionnaire was not supported by her own medical records. The limitations Dr. Yballe described in the RFC questionnaire are neither supported by Dr. Yballe's August 26, 2004 report nor by her November 12, 2004 report as both reports do not reveal any limitations on Plaintiff's functional abilities. (Tr. 681-85, 701-03).

Second, the ALJ correctly concluded the medical evidence did not support Dr. Yballe's opinion in the RFC questionnaire that Plaintiff needed to use a cane. There is no

16

medical evidence in the entire record showing Plaintiff needs to use a cane or other assistive device. Moreover, Dr. Yballe's own medical record dated August 26, 2004 revealed that Plaintiff was ambulating without an assistive device and that it was Plaintiff who requested a cane for those days when her back pain was more severe than usual. (Tr. 702). In addition, in her November 12, 2004 notes, Dr. Yballe does not mention Plaintiff's use or need to use an assistive device (Tr. 681-685); rather, she stated Plaintiff had no neurologic complaints (Tr. 683) and that Plaintiff was "advised to increase physical activity level as tolerated" (Tr. 685).

Finally, the ALJ did not err by noting "Dr. Yballe apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant." (Tr. 23). The ALJ's statement appears in his decision immediately after the discussion that "there are no neurological findings in the record to support the need of a cane." Id. Dr. Yballe must have relied on Plaintiff's subjective reports when she opined Plaintiff needed a cane because there is no objective medical evidence to support the opinion. Even assuming the ALJ referred to all of Dr. Yballe's conclusions, the ALJ did not err because he did not state that Dr. Yballe relied exclusively on Plaintiff's subjective complaints, but that she relied "quite heavily" on Plaintiff's statements (id.) and his assertion is supported by the record (Tr. 701-03, 762-63).

The ALJ's other two reasons for discounting Dr. Yballe's opinion: that is was not supported by the May 16, 2005 functional assessment and that it was not supported by the record in its entirety are less straightforward. As stated in the previous section, the Court believes portions of the assessment are consistent with Dr. Yballe's opinions and because

17

the Court is remanding the case for the ALJ to consider the assessment and state what weight he give it, the Court directs the ALJ to reconsider Dr. Yballe's June 6, 2005 RFC questionnaire in light of the assessment.

In sum, the Court believes the May 16, 2005 functional assessment is significant probative evidence and the ALJ erred in failing to state what weight he assigned to it.  As such, the case will be remanded for the ALJ to consider all the relevant evidence of record and to reevaluate Plaintiff's RFC.  The Court expresses no view as to what evidence the ALJ should accept or reject, however, the ALJ should fully articulate his reasons for rejecting any significant probative evidence.

## IV.     CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **REVERSED** and **REMANDED** pursuant to sentence four, 42 U.S.C. 405(g).  On remand, the ALJ shall (1) consider the May 16, 2005 functional assessment and Dr. Yballe's findings in the June 6, 2005 RFC questionnaire; (2) reevaluate Plaintiff's RFC in light of this evidence; (3) articulate specific and adequate reasons for rejecting any significant probative evidence; and (4) conduct any other proceedings deemed appropriate.   The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  21st  day of August, 2007.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record